Brian A. Knutsen, WSBA No. 38806
Paul A. Kampmeier, WSBA No. 31560
Kampmeier & Knutsen, PLLC
221 S.E. 11th Avenue, Suite 217
Portland, Oregon 97214
Phone: (503) 841-6515

Lauren Goldberg, OSB No. 085678 (*pro hac vice forthcoming*)
Simone Anter, WSBA No. 52716 (*admission application forthcoming*)
Columbia Riverkeeper
407 Portway Ave. Suite 301
Hood River, Oregon 97031
Phone: (541) 387-3030

*Attorneys for Plaintiff Columbia Riverkeeper*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| COLUMBIA RIVERKEEPER, | ) | No. 2:18-cv-380 |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| DOUGLAS COUNTY PUBLIC | ) | |
| UTILITY DISTRICT; RONALD E. | ) | |
| SKAGEN, in his official capacity as a | ) | |
| Commissioner of Douglas County | ) | |
| Public Utility District; MOLLY | ) | |
| SIMPSON, in her official capacity as | ) | |
| a Commissioner of Douglas County | ) | |
| Public Utility District; and AARON | ) | |
| J. VIEBROCK, in his official | ) | |
| capacity as a Commissioner of | ) | |
| Douglas County Public Utility | ) | |
| District, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMPLAINT - 1

# I.    Introduction

1.    This action is a citizen suit brought under section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Columbia Riverkeeper seeks declaratory and injunctive relief to compel defendants the Douglas County Public Utility District and Commissioners Ronald E. Skagen, Molly Simpson, and Aaron J. Viebrock, in their official capacities as the Commissioners of the Douglas County Public Utility District (collectively, the "PUD"), to comply with sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discontinuing unpermitted discharges of pollutants from the Wells Dam (the "Dam")[1] located on the Columbia River unless and until the PUD obtains a National Pollutant Discharge Elimination System ("NPDES") permit authorizing the discharges. Columbia Riverkeeper also seeks the imposition of civil penalties against the PUD for its longstanding and ongoing CWA violations and an award of costs, including attorneys' and expert witnesses' fees.

2.    The PUD owns and operates the hydroelectric Dam on the Columbia River that discharges pollutants, including oils, greases, other lubricants, and

---

[1] The term "Dam," as used herein, includes the Wells Dam and all associated structures and facilities, including turbines, powerhouses, transformers, spillways, navigation lock systems, fish passage facilities, and cranes.

cooling water and the heat associated therewith. These discharges are not

authorized by an NPDES permit and therefore violate section 301(a) of the CWA,

33 U.S.C. § 1311(a).

## II.    Jurisdiction and Venue

3.    The Court has subject matter jurisdiction over Columbia

Riverkeeper's claim under section 505(a) of the CWA, 33 U.S.C. § 1365(a) and 28

U.S.C. § 1331 (federal question). Sections 309(d) and 505 of the CWA, 33 U.S.C.

§§ 1319(d) and 1365, authorize the requested relief. The requested relief is also

proper under 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202

(injunctive relief).

4.    In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. §

1365(b)(1)(A), and 40 C.F.R. § 135.2, Columbia Riverkeeper notified the PUD of

its violations of the CWA and of Columbia Riverkeeper's intent to sue by letter

dated and postmarked September 19, 2018 ("Notice Letter"). The PUD received

the Notice Letter on September 24, 2018. A copy of the Notice Letter is attached to

this complaint as Exhibit 1. In accordance with section 505(b)(1)(A) of the CWA,

33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(2), Columbia Riverkeeper

provided copies of the Notice Letter to the Commissioners of the PUD, the

Administrator of the United States Environmental Protection Agency ("EPA"), the

Regional Administrator of Region 10 of the EPA, and the Director of the

Washington Department of Ecology ("Ecology") by mailing copies to these individuals on September 19, 2018 via certified mail.

5.     At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and the copies thereof were issued as described in the preceding paragraph.

6.     As of the filing of this complaint, neither EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations addressed in the Notice Letter and herein.

7.     The violations complained of in the Notice Letter are continuing or are reasonably likely to continue to occur. The PUD is in violation of the CWA.

8.     The source of the violations complained of is located in Douglas and Chelan Counties, Washington, within the Eastern District of Washington, and venue is therefore appropriate in the Eastern District of Washington under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.    Parties

9.     Plaintiff Columbia Riverkeeper is suing on behalf of itself and its members. Columbia Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. The mission of Columbia Riverkeeper is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Columbia

Riverkeeper operates scientific, educational, and legal programs aimed at protecting water quality, air quality, and habitat in the Columbia River Basin.

10. Columbia Riverkeeper has representational standing to bring this action. Columbia Riverkeeper has over 16,000 members, many of which reside in Washington in the vicinity of waters affected by the PUD's illegal discharges of pollutants. Members of Columbia Riverkeeper use and enjoy the waters and the surrounding areas that are adversely affected by the PUD's discharges. Columbia Riverkeeper's members use these areas for, *inter alia*, fishing, rafting, hiking, walking, windsurfing, photographing, boating, and observing wildlife. The environmental, health, aesthetic, and recreational interests of Columbia Riverkeeper's members have been, are being, and will be adversely affected by the PUD's illegal discharges of pollutants from the Dam and by the members' reasonable concerns related to the effects of the discharges. The members are further concerned that, because these discharges are not subject to an NPDES permit as required by the CWA, there are not sufficient restrictions imposed on, and monitoring and reporting of, the discharges to minimize the adverse water quality impacts of the discharges. These injuries are fairly traceable to the violations and redressable by the Court.

11. Columbia Riverkeeper has organizational standing to bring this action. Columbia Riverkeeper has been actively engaged in a variety of

educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of the Columbia River and its tributaries. The PUD's failure to obtain an NPDES permit for its discharges has deprived Columbia Riverkeeper of information that would be required by the permit's monitoring and reporting conditions and available to Columbia Riverkeeper. This information would assist Columbia Riverkeeper in its efforts to educate and advocate for greater environmental protection. Thus, Columbia Riverkeeper's organizational interests have been adversely affected by the PUD's violations. These injuries are fairly traceable to the violations and redressable by the Court.

12.     Defendant Douglas County Public Utility District is a municipal corporation formed under the laws of the State of Washington. *See* Rev. Code of Wash., Title 54. The Douglas County Public Utility District owns and/or operates the Dam.

13.     Defendant Commissioners Ronald E. Skagen, Molly Simpson, and Aaron J. Viebrock are the Commissioners of the Douglas County Public Utility District. As the Commissioners of the Douglas County Public Utility District, they are responsible for ensuring that the Douglas County Public Utility District complies with applicable laws.

## IV.    Legal Framework

14.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes unlawful the discharge of any pollutant by any person unless authorized by, *inter alia*, a NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

15.    Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

16.    Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States including the territorial seas."

17.    Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

## V.    Factual Background

### The Affected Community & Environment

18.    The Columbia River is one of the West's great river systems. The river supports rich fishing traditions and provides water for communities, agriculture, recreation opportunities, and for hydroelectric dams. The Columbia

River is also severely degraded by pollution. Toxic pollution threatens the health of people that eat local fish and jeopardizes the public's right to eat fish caught locally. Rising water temperatures also threaten the health of salmon and other aquatic life that rely on cool water for survival.

19.     In 2006 EPA designated the Columbia River Basin a Critical Large Aquatic Ecosystem because toxic contamination and other pollution are so severe. In 2009 EPA released an in-depth report on toxic pollution in the Columbia River, the *Columbia River Basin: State of River Report for Toxics*.[2] EPA's report concluded that harmful pollutants are moving up the food chain, impacting humans, fish, and wildlife. As the report explains, "[i]n 1992, an EPA national survey of contaminants in fish in the United States alerted EPA and others to a potential health threat to tribal and other people who eat fish from the Columbia River Basin." This survey prompted further study on the contaminated fish and the potential impacts on tribal members.

20.     In particular, EPA funded four Columbia River Tribes, through the Columbia River Intertribal Fish Commission ("CRITFC"), to study contaminant

---

[2] U.S. EPA, *Columbia River Basin State of River Report for Toxics* (hereafter *State of the River Report*) (January 2009), https://www.epa.gov/columbiariver/2009-state-river-report-toxics).

levels in fish caught at traditional fishing sites.[3] The study demonstrated the presence of 92 toxic chemicals in fish consumed by tribal members, resulting in a 50-fold increase in cancer risk among tribal members whose diets rely on river-caught fish. Contaminants found in these fish include PCBs, dioxins, furans, arsenic, mercury, and DDE, a toxic breakdown product of DDT.[4]

21.     The CRITFC study is not alone in demonstrating the serious problem of toxic contamination. From 1989 to 1995, the Lower Columbia River Bi-State Water Quality Program ("Bi-State Program") generated substantial evidence showing that water and sediment in the Lower Columbia River and its tributaries have levels of toxic contaminants that are harmful to fish and wildlife.[5] The Bi-State Program concluded that:

- Dioxins and furans, metals, PCBs, PAHs, and pesticides impair the water sediment, and fish and wildlife;

---

[3] *State of the River Report,* at 4.

[4] *Id.* at 19.

[5] Lower Columbia River Estuary Partnership. 2007. *Lower Columbia River and Estuary Ecosystem Monitoring: Water Quality and Salmon Sampling Report* at 1.

- Arsenic, a human carcinogen, exceeded both EPA ambient water criteria for protection of human health and the EPA human health advisories for drinking water;

- Beneficial uses such as fishing, shellfishing, wildlife, and water sports are impaired;

- Many toxic contaminants are moving up the food chain and accumulating in the bodies of animals and humans that eat fish;

- People who eat fish from the lower Columbia over a long period of time are exposed to health risks from arsenic, PCBs, dioxins and furans, and DDT and its breakdown products.[6]

22.     Other studies have confirmed and added to the overwhelming scientific evidence on toxic contamination on the Columbia River Basin.[7]

23.     The pollution discharges that are the subject of this Complaint contribute to the pollution crisis on the Columbia River. According to the National Oceanic & Atmospheric Administration ("NOAA"): "Spilled oil can harm living things because its chemical constituents are poisonous. This can affect organisms

---

[6] *Id.* at 5–6.

[7] *Id.* at 6 (citing studies by USGS, the U.S. Army Corps of Engineers, DEQ, and others); *see generally* U.S. EPA, *State of the River Report.*

both from internal exposure to oil through ingestion or inhalation and from external exposure through skin and eye irritation. Oil can also smother some small species of fish or invertebrates and coat feathers and fur, reducing birds' and mammals' ability to maintain their body temperatures."[8]

24.     The vicinity of the Dam that is the subject of this Complaint and the Columbia River are used by the citizens of Washington and visitors, as well as by Columbia Riverkeeper's members, for recreational activities. Columbia Riverkeeper's members also derive aesthetic benefits from the receiving waters. Columbia Riverkeeper's members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters, shorelines, air and the nearby areas, and by the PUD's contributions to such polluted state.

### The PUD's Dam and Discharges of Pollutants

25.     The PUD owns and operates the hydroelectric Dam.

---

[8] NOAA, Office of Response and Restoration, *How Oil Effects Fish and Wildlife in Marine Environments,* http://response.restoration.noaa.gov/oil-and-chemical-spills/oil-spills/how-oil- harms-animals-and-plants-marine-environments.html.

26.     The Dam is located on the Columbia River approximately ten miles northeast of the city of Chelan, Washington. The Dam is located within and discharges pollutants to waters within Douglas and Chelan Counties, Washington.

27.     The Columbia River is a navigable water body at the location of the Dam.

28.     Upon information and belief, the PUD discharges oils, greases, lubricants, and other pollutants at the Dam collected from various sources through sumps and other systems. These discharges have occurred each and every day during the five years and sixty days prior to the filing of this Complaint, and are continuing to occur or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

29.     Upon information and belief, the PUD discharges from the Dam cooling water, and the associated heat, used to cool a variety of Dam components and materials. These discharges have occurred each and every day during the five years and sixty days prior to the filing of this Complaint, and are continuing to occur or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

30.     Upon information and belief, the PUD utilizes Kaplan turbines at the Dam, which have variable pitch blades that can be adjusted to increase efficiency. The shaft and hubs of these turbines are filled with oil or another pollutant. This oil

or other pollutant leaks to surface waters from certain locations, including the turbine blade packing/seals. In addition, wicket gates control the amount of water flowing through the turbines at the Dam. The wicket gate bearings are lubricated with grease or another lubricant. This grease or other lubricant is continuously fed into the bearings and discharged into surface waters. These discharges have occurred each and every day during the five years and sixty days prior to the filing of this Complaint, and are continuing to occur or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

31.     Upon information and belief, the PUD also discharges oils, greases, lubricants, and other pollutants from the Dam due to spills, equipment failures, operator errors, and other similar events. For example, oil was spilled from the Dam on or about October 27, 2014 and on or about January 19, 2016 due to failures. Discharges of this nature at the Dam are continuing to occur or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

32.     The discharges from the Dam described herein are made from pipes and/or other discernible, confined, and/or discrete conveyances.

33.     The discharges from the Dam described herein are discharges of pollutants to navigable waters from point sources that violate section 301(a) of the

CWA, 33 U.S.C. § 1311(a), when made without the authorization of a NPDES permit.

34.     A penalty should be imposed against the PUD under the penalty factors set forth in section 309(d) of the CWA, 33 U.S.C. § 1319(d).

35.     The PUD's violations were avoidable had the PUD been diligent in overseeing facility operations and maintenance and regulatory compliance.

36.     The PUD has benefited economically as a consequence of its violations and its failure to implement improvements at the Dam.

37.     In accordance with section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Columbia Riverkeeper will mail copies of this complaint that are either filed and date-stamped copies or conformed copies to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

**VI.     Cause of Action**

38.     Columbia Riverkeeper realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

39.     The PUD is in violation of section 301(a) of CWA, 33 U.S.C. § 1311(a), by discharging pollutants to navigable waters from the Dam as described herein without an NPDES permit. These constitute violations of an "effluent

standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. §

1365(f).

40.     Upon information and belief, these violations committed by the PUD

are continuing or are reasonable likely to reoccur. Any and all additional violations

of the CWA which occur after those described in the Notice Letter but before a

final decision in this action should be considered continuing violations subject to

this Complaint.

## VII.     Relief Requested

Wherefore, Columbia Riverkeeper respectfully requests that this Court grant

the following relief:

A.     Issue a declaratory judgment that the PUD has violated and continues

to be in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by

discharging pollutants from the Dam to the Columbia River without the

authorization of an NPDES permit as described herein;

B.     Issue an injunction enjoining the PUD from discharging pollutants

from the Dam to the Columbia River as described herein until such discharges are

authorized aby an NPDES permit;

C.     Issue an injunction requiring the PUD to take specific actions to

evaluate and remediate the environmental harm caused by its violations;

D.     Grant such other preliminary and/or permanent injunctive relief as Columbia Riverkeeper may from time to time request during the pendency of this case;

E.     Order the PUD to pay civil penalties for each of its CWA violations pursuant to sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19.

F.     Award Columbia Riverkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

G.     Grant such additional relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 11th day of December, 2018.

KAMPMEIER & KNUTSEN, PLLC

By:  s/ Brian A. Knutsen
      Brian A. Knutsen, WSBA No. 38806
221 S.E. 11th Ave., Suite 217;
Portland, Oregon 97214
Tel: (503) 841-6515
Email: brian@kampmeierknutsen.com

Paul A. Kampmeier, WSBA No. 31560
615 Second Avenue, Suite 360
Seattle, Washington 98104
Tel: (206) 223-4088 x 4
Email: paul@kampmeierknutsen.com

COLUMBIA RIVERKEEPER

Lauren Goldberg, OSB No. 085678 (*pro hac vice forthcoming*)
Simone Anter, WSBA No. 52716 (*admission application forthcoming*)
407 Portway Ave. Suite 301
Hood River, OR 97031
Tel: (541) 387-3030
Email: lauren@columbiariverkeeper.org
        simone@columbiariverkeeper.org

*Attorneys for plaintiff Columbia Riverkeeper*

# EXHIBIT 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

September 19, 2018

**Via CERTIFIED MAIL – Return Receipt Requested**

Ronald E. Skagen                                    Molly Simpson
PUD Commissioner District 1                         PUD Commissioner District 2
Douglas County Public Utility District             Douglas County Public Utility District
1151 Valley Mall Parkway                           1151 Valley Mall Parkway
East Wenatchee, WA 98802                            East Wenatchee, WA 98802

Aaron J. Viebrock                                   Managing Agent
PUD Commissioner District 3                         Wells Dam
Douglas County Public Utility District             Douglas County Public Utility District
1151 Valley Mall Parkway                           1151 Valley Mall Parkway
East Wenatchee, WA 98802                            East Wenatchee, WA 98802

Re:     **NOTICE OF INTENT TO SUE DOUGLAS COUNTY PUD UNDER THE CLEAN WATER ACT**

Dear Commissioners Ronald E. Skagen, Molly Simpson, and Aaron J. Viebrock, and Managing Agent:

This letter is to provide you with sixty days notice of Columbia Riverkeeper's ("Riverkeeper") intent to file a citizen suit against the Douglas County Public Utility District and Commissioners Ronald E. Skagen, Molly Simpson, and Aaron J. Viebrock, in their official capacity as the Commissioners of the Douglas County Public Utility District (collectively, "PUD") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described herein. The CWA prohibits any person from discharging any pollutant to waters of the United States except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit. Continuing to discharge pollutants without securing an NPDES permit constitutes an ongoing violation of the CWA.

The PUD has and continues to violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants to waters of the United States and the State of Washington from the Wells Dam and its associated structures and facilities ("Dam").[1] Specifically, the PUD

---

[1] The term "Dam," as used herein, includes the Dam and all associated structures and facilities, including turbines, powerhouses, transformers, spillways, navigation lock systems, fish passage facilities, and cranes. The approximate location of the Dam is identified in Appendix 1.

discharges oils (including turbine and transformer oils), greases, other lubricants, and cooling water from the Dam without the authorization of an NPDES permit in violation of the CWA.

This notice of intent to sue is part of Riverkeeper's effort to protect people who rely on the Columbia River for uses including drinking water, food, and recreation. Riverkeeper's mission is to protect and restore the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. The organization's strategy for protecting the Columbia River and its tributaries includes working in river communities and enforcing laws that protect public health, salmon, and other fish and wildlife.

## I.    Legal Background.

Washington's rivers, and the use of rivers by people, fish, and wildlife, are protected by both federal and state law. In 1972, Congress passed the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA is the cornerstone of surface water quality protection in the United States. In the forty years since its passage, the CWA has dramatically increased the number of waterways that are once again safe for fishing and swimming. Despite the great progress in reducing water pollution, many of the Nation's waters still do not meet the water quality goals. In fact, the vast majority of rivers and streams in Washington fail to meet basic state water quality standards for pollutants such as toxics and temperature.[2] These standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water.

The NPDES permitting scheme is the primary means by which discharges of pollutants are controlled. At a minimum, NPDES permits must include technology-based effluent limitations, any more stringent limitations necessary to meet water quality standards, and monitoring and reporting requirements. *See* 33 U.S.C. §§ 1311, 1342, 1318. Every year, EPA and the state of Washington issue hundreds of permits for pollution discharges into the Columbia and Snake Rivers. These include permits that regulate the discharge of toxic pollution, hot water, bacteria, and other pollutants. According to EPA, improvements to the quality of water in our rivers are directly linked to the implementation of the NPDES program and the control of pollutants discharged from both municipal and industrial point sources.[3]

## II.    The Heavy Toll of Pollution on the Columbia River.

The Columbia River is one of the West's greatest river systems. This river supports rich fishing traditions, provides water for communities and agriculture, recreation opportunities, and power for hydroelectric dams. The river is also severely degraded by pollution. Toxic pollution threatens the health of people that eat local fish and jeopardizes the public's right to eat fish

---

[2] *See* State of Washington 303(d) List, available at https://ecology.wa.gov/Water-Shorelines/Water-quality/Water-improvement/Assessment-of-state-waters-303d; State of Oregon 303(d) List, available at https://www.deq.state.or.us/wq/assessment/rpt2010/results303d10.asp.

[3] U.S. EPA, *Water Permitting 101* at 11, http://www.epa.gov/npdes/pubs/101pape.pdf.

caught locally. Rising water temperatures also threaten the health of salmon and other aquatic life that rely on cool water for survival.

In 2006 EPA designated the Columbia River Basin a Critical Large Aquatic Ecosystem because toxic contamination and other pollution is so severe. In 2009 EPA released an in-depth report on toxic pollution in the Columbia, the *Columbia River Basin: State of River Report for Toxics*.[4] EPA's report concluded that harmful pollutants are moving up the food chain, impacting humans, fish, and wildlife. As the report explains, "[i]n 1992, an EPA national survey of contaminants in fish in the United States alerted EPA and others to a potential health threat to tribal and other people who eat fish from the Columbia River Basin." This survey prompted further study on the contaminated fish and the potential impacts on tribal members.

In particular, EPA funded four Columbia River tribes, through the Columbia River Intertribal Fish Commission ("CRITFC"), to study contaminant levels in fish caught at traditional fishing sites.[5] The study demonstrated the presence of 92 toxic chemicals in fish consumed by tribal members, resulting in a 50-fold increase in cancer risk among tribal members whose diets rely on river-caught fish. Contaminants found in these fish include PCBs, dioxins, furans, arsenic, mercury, and DDE, a toxic breakdown product of DDT.[6]

The CRITFC study is not alone in demonstrating the serious problem of toxic contamination. From 1989 to 1995, the Lower Columbia River Bi-State Water Quality Program ("Bi-State Program") generated substantial evidence demonstrating that water and sediment in the Lower Columbia River and its tributaries have levels of toxic contaminants that are harmful to fish and wildlife.[7] The Bi-State Program concluded that:

- Dioxins and furans, metals, PCBs, PAHs, and pesticides impair the water sediment, and fish and wildlife;
- Arsenic, a human carcinogen, exceeded both EPA ambient water criteria for protection of human health and the EPA human health advisories for drinking water;
- Beneficial uses such as fishing, shellfishing, wildlife, and water sports are impaired;
- Many toxic contaminants are moving up the food chain and accumulating in the bodies of animals and humans that eat fish;
- People who eat fish from the lower Columbia over a long period of time are exposed to health risks from arsenic, PCBs, dioxins and furans, and DDT and its breakdown products.[8]

---

[4] U.S. EPA, *Columbia River Basin State of River Report for Toxics* (hereafter *State of the River Report*) (January 2009), https://www.epa.gov/columbiariver/2009-state-river-report-toxics).

[5] *Id*. at 3.

[6] *Id.* at 19.

[7] Lower Columbia River Estuary Partnership. 2007. *Lower Columbia River and Estuary Ecosystem Monitoring: Water Quality and Salmon Sampling Report* at 1.
[8] *Id.* at 5 - 6.

COMPLAINT - 21

Other studies have confirmed and added to the overwhelming scientific evidence on toxic contamination in the Columbia River Basin.[9]

Pollution discharges from the PUD's Dam contribute to the pollution crisis on the Columbia River. According to the National Oceanic & Atmospheric Administration ("NOAA"):

> Spilled oil can harm living things because its chemical constituents are poisonous. This can affect organisms both from internal exposure to oil through ingestion or inhalation and from external exposure through skin and eye irritation. Oil can also smother some small species of fish or invertebrates and coat feathers and fur, reducing birds' and mammals' ability to maintain their body temperatures.[10]

The impacts of oil pollution are sobering. Yet the PUD discharges oil and other pollution from the Dam without the NPDES permit authorization required by the CWA. In turn, the PUD fails to monitor and report pollution in a manner that enables the public to fully understand the extent and severity of the problem.

## III. Unpermitted Pollutant Discharges from the Dam.

Section 301(a) of the CWA prohibits discharges of oils (including turbine and transformer oils), greases, lubricants, cooling water, and other pollutants to the Columbia River from the Dam without NPDES permit authorization. 33 U.S.C. § 1311(a). Without an NPDES permit, the PUD is failing to monitor, report, and reduce pollution discharges pursuant to the CWA and state and federal implementing rules.

### A. Chronic Pollutant Discharges from the Dam.

The Dam utilizes ten Kaplan turbines[11], which have variable pitch blades that can be adjusted to increase efficiency. The shaft and hubs of these turbines are filled with oil or another pollutant. This oil or other pollutant leaks to surface waters from certain locations, including the turbine blade packing/seals. Accordingly, the PUD is in violation of section 301(a) of the CWA by discharging oil or other pollutant from each of the Kaplan turbines at the Dam each and every day for the past five years.

---

[9] *Id.* at 6 (citing studies by USGS, the U.S. Army Corps of Engineers, DEQ, and others); *see generally* U.S. EPA, *State of the River Report*.

[10] NOAA, Office of Response and Restoration, *How Oil Effects Fish and Wildlife in Marine Environments,* http://response.restoration.noaa.gov/oil-and-chemical-spills/oil-spills/how-oil-harms-animals-and-plants-marine-environments.html.

[11] TOSHIBA, WELLS DAM REHABILITATION PROJECT (WASHINGTON), https://www.toshiba.com/taes/services/hydro-turbine-generator-services/rehabilitation-technologies/wells-dam-rehabilitation-project (last visited July 25, 2018).

COMPLAINT - 22

Wicket gates control the amount of water flowing through the turbines at the Dam. The wicket gate bearings are lubricated with grease or another lubricant. This grease or other lubricant is continuously fed into the bearings and discharged into surface waters. The PUD is in violation of section 301(a) of the CWA by discharging grease or another lubricant from the bearings at each of the turbine wicket gates at the Dam each and every day for the past five years.

The Dam discharges oils, greases, lubricants, and other pollutants collected from various sources through sumps, including powerhouse drainage sumps, un-watering sumps, spillway sumps, and other systems. Of these pollutant discharges, none of them are authorized by an NPDES permit. The PUD is in violation of section 301(a) of the CWA by discharging pollutants from these various drainage and/or un-watering sumps and other systems at the Dam. These violations have occurred each and every time the PUD made these discharges in the past five years and continue to occur.

The Dam discharges cooling water, and the heat associated therewith, that has been used to cool a variety of Dam components and materials, including turbines, generators, transformers, and lubricating oils. The PUD is in violation of section 301(a) of the CWA by discharging cooling water, and the associated heat, from the Dam each and every day for the past five years.

**B.      Acute Pollutant Discharges from the Dam.**

The PUD violates section 301(a) of the CWA every time it discharges oil, lubricant, or other pollutants to the Columbia River from the Dam. Riverkeeper requested public records detailing oil spills and other discharges from the Dam. Table 1 describes reported acute pollution discharges from the Dam to the Columbia River during the last five years. Riverkeeper does not concede that the amount of pollution reported is, in fact, the amount of pollution actually discharged from the Dam.

| Table 1 Wells Dam Reported Discharges | | | |
|---|---|---|---|
| **Reported Date of Discharge** | **Reported Pollutant Discharged** | **Reported Amount Discharged** | **Comments from Discharge Report** |
| 10/27/14 | Hydraulic oil | 2,000 gallons | Hydraulic line failure, up to 2,000 gallons of hydraulic oil released from dam; estimated 5 gallons passed through sump and discharged to the river. |
| 1/19/16 | Turbine Oil | 2-3 gallons | Pinhole in pipe at East fish screen. 2-3 gallons release of turbine oil, shut down turbine and boat responded. |
| 3/14/17 | Turbine Oil | N/A | "Turbine oil discharged from a hydro-turbine unit due to an unknown cause at this time." Wells Dam at the tail race, Chelan County |
| 5/30/18 | Hydraulic Oil | 2 gallons | "A hydraulic line on a governor failed. Hydraulic oil was release to a floor drain. Some of the oil reached the river. Small areas of sheen were noted along the face of the dam. |

COMPLAINT - 23

Riverkeeper provides notice that the PUD has violated section 301(a) of the CWA every time during the last five years the PUD discharged oil, lubricant, or other pollutants to the Columbia River from the Dam.  At a minimum, the PUD has violated section 301(a) of the CWA by discharging pollutants at the Dam as described in Table 1.

## IV.    Public Documents Announce the Need for an NPDES Permit for Dam Discharges.

It should be apparent that discharging oil, greases, lubricants, cooling water, and other pollution to the Columbia River from the Dam requires an NPDES permit.  For instance, in 2012, Riverkeeper sued the United States Army Corps of Engineers (the "Corps") for failing to obtain pollution discharge permits for eight Columbia River and Snake River dams (Bonneville, The Dalles, Ice Harbor, John Day, Little Goose, Lower Monumental, McNary, Lower Granit).[12] As a result, the Corps agreed to settle the case in 2014, which culminated in a consent decree requiring the Corps to:

1. Apply to EPA for NPDES discharge permits;
2. Investigate using less harmful lubricants in dam equipment; and
3. Monitor the type and quantity of pollution being discharged into the rivers.[13]

The Corps applied for the NPDES permits and EPA is in the process of drafting to permits for the dams at issue.  Furthermore, in 2017 Riverkeeper reached a settlement with the U.S. Bureau of Reclamation ("Bureau"), requiring the Bureau to join its federal partners at the Corps to investigate replacing toxic oil at the Grand Coulee Dam, also on the Columbia River, with eco-friendly lubricants or switch to using non-lubricated equipment.[14]  The Bureau also agreed to apply for an NPDES permit for pollution discharges from Grand Coulee.

Although the Corps and the Bureau, both federal agencies, agreed to apply for NPDES permits, the PUDs have not applied for any permits.

Furthermore, EPA requires permits for the exact kinds of discharges occurring at the Dam.  On April 27, 2018, the EPA promulgated a draft NPDES General Permit for pollutant discharges from hydroelectric generating facilities in Idaho pursuant to the provisions of the CWA, 33 USC §1251.[15]  The draft permit authorizes discharges according to five categories. The permit "establishes effluent limitations for:

---

[12] COLUMBIA RIVERKEEPER, STOPPING OIL POLLUTION FROM DAMS, https://www.columbiariverkeeper.org/our-work-saving-salmon/stopping-oil-pollution-dams (last visited July 24, 2018).

[13] *Id.*

[14] COLUMBIA RIVERKEEPER, GRAND COULEE DAM SETTLEMENT, https://www.columbiariverkeeper.org/news/2017/1/grand-coulee-dam-settlement (last visited August 27, 2018).

[15] THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NPDES FACT SHEET: WASTEWATER DISCHARGES FROM HYDROELECTRIC GENERATING FACILITIES GENERAL PERMIT (2018) available at https://www.epa.gov/sites/production/files/2018-04/documents/r10-npdes-idaho-hydroelectric-gp-idg360000-fact-sheet-2018.pdf.

1. pH, oil and grease, and monitoring requirements for temperature and flow for discharges of noncontact cooling water and equipment-related cooling water systems.
2. pH, oil and grease, and monitoring requirements for flow for discharges from equipment and floor drains.
3. pH, oil and grease, and monitoring requirements for flow for discharges from equipment and facility maintenance–related water.
4. pH, oil and grease, and monitoring requirements for flow for discharges from maintenance-related water during flood/high water events and equipment related back wash water from strainer screens.
5. pH, oil and grease, and monitoring requirements for flow and temperature for discharges from any combination of the following: equipment-related cooling water, equipment and floor drain water, maintenance-related water, maintenance-related water from flood/high water events and for equipment related backwash strainer water."[16]

According to the EPA:

 Most discharges that affect water quality are ancillary to the direct process of generating electricity at a hydroelectric facility and result mostly from oil spills, equipment leaks, and improper storage. The General Permit is proposing to require development and implementation of a Best Management Practices (BMP) Plan to minimize or eliminate the discharge of oil and grease and an annual self-certification report demonstrating compliance with the BMP Plan.[17]

In short, the PUD should have been aware long before this notice of intent to sue letter that discharges associated with the Wells Dam require an NPDES permit given Riverkeeper's well-publicized lawsuits and settlements with the federal government and given EPA's decision to issue a general permit in Idaho. Upon information and belief, the PUD has neither applied for nor obtained an NPDES permit for oils, greases, lubricants, cooling water, and other pollution discharges from the Wells Dam.

**V.      Party Giving Notice of Intent to Sue.**

The full name, address, and telephone number of the party giving notice is:

Columbia Riverkeeper
407 Portway Ave. Suite 301
Hood River, OR 97031
(541) 387-3030

---

[16] *Id.* at 14.

[17] *Id.* at 15.

## VI.     Attorneys Representing Riverkeeper.

The attorneys representing Riverkeeper in this matter are:

Brian A. Knutsen
Kampmeier & Knutsen, PLLC
U.S. Postal Service Address:
P.O. Box 15099, Portland, Oregon 97293
Location (no U.S. Postal delivery; couriers okay):
221 S.E. 11th Ave., Suite 217, Portland, Oregon 97214
(503) 841-6515
brian@kampmeierknutsen.com
(Licensed in Oregon and Washington)

Lauren Goldberg, Legal and Program Director
Columbia Riverkeeper
407 Portway Ave. Suit 301
Hood River, OR 97031
(541) 965-0985
lauren@columbiariverkeeper.org
(Licensed in Oregon)

Simone Anter, Associate Attorney
Columbia Riverkeeper
407 Portway Ave. Suit 301
Hood River, OR 97031
(541) 399-5312
simone@columbiariverkeeper.org
(Licensed in Washington)

## VII.    Conclusion.

The violations described herein reflect those indicated by the information currently available to Riverkeeper.  Riverkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice of intent to sue.

Under Section 309(d) of the CWA, 33 U.S.C § 1319(d), the PUD is subject to a separate daily penalty assessment for each violation (the current maximum daily penalty assessment is $53,484 for each violation).  In addition to civil penalties, Riverkeeper will seek injunctive relief to prevent further CWA violations under Sections 505(a) and (d) of the CWA, 33 U.S.C § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Riverkeeper believes that this notice of intent to sue sufficiently states grounds for filing suit.  Riverkeeper intends to file a citizen suit against the Douglas County Public Utility District and Commissioners Ronald E. Skagen, Molly Simpson, and Aaron J. Viebrock, in their official

capacity as the Commissioners of the Douglas County Public Utility District, under section 505(a) of the CWA, 33 U.S.C. § 1365(a), for violations at the expiration of the sixty-day notice period or shortly thereafter.

Riverkeeper is willing to discuss effective remedies for the violations addressed in this letter and appropriate settlement terms during the sixty-day notice period. Such discussions should be initiated within ten days of receipt of this letter if there is an interest in attempting to resolve this matter in the absence of litigation. Riverkeeper does not intend to delay the filing of a complaint if discussions are continuing when the notice period ends. Please direct all correspondence to Brian A. Knutsen at (503) 841-6515 or brian@kampmeierknutsen.com.

Very truly yours,

KAMPMEIER & KNUTSEN, PLLC

By: _____

Brian A. Knutsen
Lauren Goldberg
Simone Anter

# CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of Washington and the United States that I am counsel for Columbia Riverkeeper and that on September 19, 2018, I caused copies of the foregoing Notice of Intent to Sue Douglas County PUD Under the Clean Water Act to be served on the following by depositing them with the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Ronald E. Skagen
PUD Commissioner District 1
Douglas County Public Utility District
1151 Valley Mall Parkway
East Wenatchee, WA 98802

Molly Simpson
PUD Commissioner District 2
Douglas County Public Utility District
1151 Valley Mall Parkway
East Wenatchee, WA 98802

Aaron J. Viebrock
PUD Commissioner District 3
Douglas County Public Utility District
1151 Valley Mall Parkway
East Wenatchee, WA 98802

Managing Agent
Wells Dam
Douglas County Public Utility District
1151 Valley Mall Parkway
East Wenatchee, WA 98802

Acting Administrator Andrew Wheeler
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
Mail Code 1101A
Washington DC 20460

Acting Regional Administrator Chris Hladick
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Mail Code RA-210
Seattle, WA 98101

Director Maia D. Bellon
Washington Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

Brian A. Knutsen

COMPLAINT - 28

# APPENDIX 1

Location: Wells Dam is located in North Central Washington between Seattle and Spokane river mile 515.8 on the Columbia River.
47º 56' 49" N, 119º 51' 54" W
Map:

